FRANK DUFFY v. WILLIAM P. MARTIN.
W. R. JOHNSON, THIRD-PARTY DEFENDANT.

121 N. W. (2d) 343.

April 19, 1963—No. 38,783.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *M. J. Coyne,* for appellant.

*Swanson & Lasley* and *W. M. Lasley,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order denying third-party defendant's motion for judgment notwithstanding the verdict or for a new trial.

This action originally was commenced by plaintiff against defendant, William P. Martin, to recover damages arising from a rear-end collision between an automobile driven by defendant Martin and one driven by plaintiff. Defendant impleaded W. R. Johnson as third-party defendant, alleging that if defendant were liable to plaintiff he was entitled to contribution from said third-party defendant. The jury found in favor of plaintiff against both the original defendant and third-party defendant.

The facts essential to a determination of the issues involved may be quite briefly stated. On October 29, 1959, at about 5 p.m., plaintiff was driving his automobile in a northerly direction on West Broadway near Logan Avenue in the city of Minneapolis. He was followed, a few car lengths behind, by defendant Martin. West Broadway, near the point of the collision, consists of two lanes for traffic in each direction and a parking lane on each side in addition to the driving lanes. Near Logan Avenue, West Broadway curves to the right for northbound traffic for a distance of about 2½ blocks. While the evidence is conflicting as to what happened, the jury could find that as plaintiff approached the center of this curve he observed the Johnson car, parked near the curb, pull out from the parking lane and into his lane of traffic. Plaintiff observed other vehicles traveling to his left so that he thought he did not have room to pass the Johnson car. He applied his brakes and stopped his vehicle. A few seconds later he was struck in the

rear by defendant Martin. There was no contact with the Johnson car by either plaintiff or Martin.

After a verdict for plaintiff in the sum of $35,000, defendant Martin moved for a new trial on the issue of damages alone, asserting that the verdict was grossly excessive. The court denied the motion and he has taken no appeal. Third-party defendant, Johnson, moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The court denied the motion for judgment notwithstanding the verdict and granted the motion for a new trial on all issues unless plaintiff consented to a reduction of the damages to $29,000. Plaintiff timely filed his consent to such reduction. This appeal is taken from the denial of Johnson's motion for judgment notwithstanding the verdict or for a new trial on all issues.

The appeal raises two questions: (1) Does it appear as a matter of law that third-party defendant, Johnson, was free from negligence proximately contributing to the occurrence of the accident? (2) Did the trial court err in its charge to the jury in reading a Minneapolis ordinance prescribing the care required by one whose car is parked as the Johnson car was?

■ The testimony of the parties conflicts as to what happened. Martin testified that he was following plaintiff's car by about three car lengths at a speed of 20 to 25 miles per hour; that plaintiff made a sudden stop in front of him for no reason apparent to him; that he did not see the Johnson car until after the collision; and that he applied his own brakes as quickly as he could, but the highway was slippery due to the fact that it was raining, and he slid into plaintiff's vehicle. He testified that the impact was not great and that he pushed plaintiff's car only a short distance. The damages to the rear of plaintiff's car amounted to $486 and to the front of the Martin car to $381.

Plaintiff testified that when he was about 100 feet from the Johnson car he saw Johnson nosing out from the curb into his lane of traffic; that he could not estimate the distance Johnson emerged from the curb but that it was sufficient so that he did not have clearance enough to pass the car and he came to a slow stop. He testified that he applied his brakes, "Like I always do, only it was a little bit faster," and that

he was struck from behind a few seconds after he had come to a stop. He testified that his vehicle was pushed past the Johnson vehicle without contact and traveled about two car lengths.

Johnson testified that he first observed plaintiff's car approaching from his rear about 150 feet away while he was still parked at the curb; that he had no idea of plaintiff's speed; that without making any signal regarding his intention to pull away from the curb he slowly pulled into the traffic lane about 2 feet; that he remained stationary after having done so while plaintiff came to a gradual and complete stop about even with his rear bumper; and that plaintiff's car was struck from behind a second or two later and slid forward until plaintiff's rear bumper was about even with Johnson's front bumper.

The controlling statute is Minn. St. 169.19, subd. 3, which reads:

"No person shall start a vehicle which is stopped, standing, or parked unless and until such movement can be made with reasonable safety."

Under the evidence in this case, the question whether Johnson was negligent in pulling out of a parked position before the movement could be made with reasonable safety clearly presented a jury issue.[1]

■ The more serious question is whether the court committed reversible error in its instructions to the jury. Among other things, the court, in instructing the jury, read § 169.19, subd. 3, of the Highway Traffic Regulation Act, and then proceeded to read an ordinance of the city of Minneapolis. The court said:

"* * * And the Code of Ordinances is substantially the same, except for one addition, and reads:

" '[Minneapolis Code of Ordinances, § 407.130.] No person shall start a vehicle which is stopped, standing or parked unless and until such movement can be made with reasonable safety, *and after giving an appropriate signal by extending the hand and arm from the left side of the vehicle, in the event any other vehicle may be affected by such movement.*' " (Italics supplied.)

The court then instructed the jury as follows:

---

[1] See, Ferguson v. Kehoe, 245 Minn. 46, 71 N. W. (2d) 168.

"* * * the same Highway Code has this provision. In all civil actions a violation of any of the provisions of this chapter by either or any of the parties to such action shall not be negligence per se, but shall be prima evidence of negligence only. That simply means this, jurors, if you find from the evidence that either party to the action violated any of the *statutes or ordinances* I just read, then you should find the violator was negligent, unless all the facts, conditions and circumstances disclosed by the evidence furnish such an explanation or excuse for violating such statute or *statutes or ordinances* that you are not satisfied by a fair preponderance of the evidence that it was negligence to violate such statute or statutes. However, in this connection I must also say that a violation of a statute is of no consequence unless it was a proximate cause of the accident." (Italics supplied.)

It is noticeable that in the last sentence of the quoted instruction the court does not say that a violation of an ordinance is of no consequence unless it was a proximate cause of the accident, leaving the implication that a violation of an ordinance, as distinguished from a violation of a statute, could lead to liability even though it were not a proximate cause of the accident.

In order to provide uniformity in traffic regulations throughout the state, our legislature has prohibited the enactment of ordinances by municipalities in conflict with state statutes, at least since 1911,[2] except where expressly authorized.

Where the statute contains no provision regulating traffic in a given situation, a municipality may regulate in that area, but, where the statute has occupied the field, an inconsistent ordinance is invalid.[3]

Guile v. Greenberg (1934) 192 Minn. 548, 257 N. W. 649, involved a collision between a car pulling out from a parking place and a truck. In that case we said (192 Minn. 550, 257 N. W. 650):

"There can be no serious doubt but that the question of defendant

---

[2]L. 1911, c. 365, § 18; Minn. St. 169.03; Johnson v. Bergquist, 184 Minn. 576, 239 N. W. 772; State v. Mandehr, 168 Minn. 139, 209 N. W. 750; LeVasseur v. Minneapolis St. Ry. Co. 221 Minn. 205, 21 N. W. (2d) 522.
[3]Bruce v. Ryan, 138 Minn. 264, 164 N. W. 982.

Florence Greenberg's negligence was one for the jury. There was evidence that in pulling out from the parking space along the curb she did not signal as required by statute to do."

That decision was based on Mason St. 1927, § 2720-17, which read as follows:

"The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and if any pedestrian or cyclist may be affected by such movement shall give a clearly audible signal by sounding the warning device, and whenever the operation of any other vehicle may be affected by such movement shall give a signal either by extending the arm horizontally from and beyond the left side of the vehicle or by an adequate mechanical or electrical signal device, plainly visible to the driver of such other vehicle, of the intention to make such movement at least fifty feet before a stop or turn is to be made, except that the requirement of signal by warning device shall apply to motor vehicles only."

At that time there was no separate statutory provision dealing with the starting of a parked car.

In 1937, subsequent to our decision in Guile v. Greenberg, *supra,* our Highway Traffic Regulation Act was rewritten, patterned after the Uniform Act Regulating Traffic.[4] L. 1937, c. 464. In that act, regulations pertaining to the starting of a parked car were separated from other provisions of the former act which governed any movement of a vehicle. These have remained substantially the same since. In addition to § 169.19, subd. 3, relating specifically to starting a parked car, subds. 4, 5, and 6 read:

"Subd. 4. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in this section, or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a highway unless and until the movement can be made with reasonable safety,

---

[4]Lowen v. Pates, 219 Minn. 566, 18 N. W. (2d) 455.

and then only after giving a clearly audible warning by sounding the horn if any pedestrian may be affected by the movement or after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by the movement.

"Subd. 5.   A signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning.

"Subd. 6.   No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear unless there is a good and sufficient reason for not being able to do so."

Under subd. 3, the statute no longer expressly requires the giving of a signal before starting a parked car, as had been the case under the prior statute as construed in Guile v. Greenberg, *supra,* but instead prohibits a parked car from moving at all until the movement can be made with reasonable safety. In contrast, the city ordinance, which the court gave to the jury, expressly requires a signal by extending the hand and arm of the driver from the left side of the vehicle. The result is that the ordinance adds a requirement that is absent from the statute.

Defendant Martin contends that there is no conflict because subds. 5 and 6 also apply to the movement of a parked car. A reading of the present statute can hardly lead to that conclusion. In the 1937 act, a separate and specific provision regulating the starting of a parked car was adopted. Subds. 5 and 6 obviously relate to other movements of the car. Subd. 5, for instance, provides that a signal to turn right *or left* should be given continuously during not less than the last 100 feet traveled by the vehicle before turning. Obviously, this could not apply to a parked car.

It may well be that the statute is broader than the ordinance in that it prohibits a driver from leaving a parked position at all until it can be made with reasonable safety, but we still are confronted with the proposition that the ordinance requires a signal before that movement is made, which requirement is absent from the statute. While the jury could have found negligence on the part of Johnson in leaving a parked position before it could be done with reasonable safety if only the stat-

ute had been given, under the court's instruction they also could have found negligence for failure to comply with the ordinance even though they concluded that the driver was not negligent under the statute. It must follow that there is such a conflict between the ordinance and the statute that the part of the ordinance adding the requirement absent from the statute should not have been given to the jury. The purpose of uniformity required by our statutes is to enable a driver of a motor vehicle to proceed in all parts of the state without the risk of violating an ordinance with which he is not familiar.

If the ordinance were not in conflict with the statute, it might be safe to assume that no harm had been done by including a violation of the ordinance as a part of the court's instruction. If, however, the ordinance adds something absent from the statute, much harm could be done if the driver's conduct is to be judged by the statute. That is the situation we have here. It is apparent that the only purpose of giving the ordinance to the jury at all was to add something that the statute did not contain. That of itself demonstrates the conflict between the ordinance and the statute, which is the thing prohibited by our highway traffic code. The case is an extremely close one in any event on the issue of liability of Johnson. In view of that fact, the error could easily have led to a verdict against him. There must therefore be a new trial on the issue of Johnson's liability. Plaintiff's verdict as against defendant should not be disturbed. There is no reversible error apparent to us in the finding of negligence against him, and he has not appealed from the denial of his motion for a new trial on the issue of damages.

In passing it should be said that there is still another objection to the court's instruction that is equally serious. Section 169.96 provides:

"This chapter shall be interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.

"In all civil actions, *a violation of any of the provisions of this chapter*, by either or any of the parties to such action or actions shall not be negligence per se but shall be prima facie evidence of negligence only." (Italics supplied.)

This statutory provision does not encompass the violation of a city ordinance, yet the court in its instructions informed the jury that a vio-

lation of either a state statute or an ordinance would be prima facie evidence of negligence. At the same time, the court concluded its instruction on this subject by stating that a violation of the statute is of no consequence unless it was a proximate cause. The court did not include the ordinance in that part of its instruction.

The decision of the trial court denying the motion of third-party defendant for a new trial is reversed.

Reversed.