The **MINNESOTA AGRICULTURAL AIRCRAFT ASSOCIATION, et al., Respondents,**

v.

**TOWNSHIP OF MANTRAP, Appellant.**

No. C6–92–2289.

Court of Appeals of Minnesota.

March 30, 1993.

Larry D. Espel, Mark F. Ten Eyck, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for respondents.

James B. Wallace, Wallace Law Office, Park Rapids, John A. Nelson, Quinlivan Law Firm, St. Cloud, for appellant.

Hubert H. Humphrey III, Atty. Gen., John K. Lampe, Sp. Asst. Atty. Gen., for amicus curiae Minnesota Department of Agriculture.

Considered and decided by HARTEN, P.J., and LANSING and FOLEY,* JJ.

## OPINION

LANSING, Judge.

A township appeals from summary judgment and an injunction prohibiting enforcement of its ordinance regulating the aerial spraying of chemicals and pesticides. We affirm the district court's determination that the ordinance is preempted by Minn. Stat. § 18B.02 (1990).

## FACTS

In May 1992 the Township of Mantrap adopted a pesticide ordinance entitled "Ordinance to Regulate Aerial Spraying, Article 4, Sect. 9, An Ordinance to Require a Permit for the Application of Aerially Applied Pesticides and/or Chemicals." The ordinance requires a permit at least sixty days before the proposed use, allows the township to attach conditions to the permit, and requires detailed information on the risks, benefits, and alternatives to the pesticide as well as a statement of the pesticide's status before the federal Environmental Protection Agency (EPA).

The ordinance was challenged by the Minnesota Agricultural Aircraft Association, an organization of licensed commercial pesticide applicators, and by R.D. Offutt Co., which farms 390 acres in Mantrap Township on which it applies pesticides. They claimed Minn.Stat. § 18B.02 (1990) preempts the ordinance. The township asserted that its ordinance was valid under the statute's express exemption for zoning ordinances.

The aircraft association and Offutt sought declaratory and injunctive relief. The Minnesota Department of Agriculture intervened in support of preemption. The

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn.

Const. art. VI, § 10.

district court granted the aircraft association and Offutt's motion for summary judgment and issued the permanent injunction. The township appeals.

## ISSUE

Did the trial court err in granting summary judgment and issuing a permanent injunction prohibiting enforcement of the township's aerial spraying ordinance on the ground that it is preempted by Minn.Stat. § 18B.02 (1990)?

## ANALYSIS

In 1987 Minnesota enacted Minn.Stat. Chapter 18B (§§ 18B.01–.39) entitled "Pesticide Control." 1987 Minn.Laws ch. 358, §§ 43–81. The chapter includes a section entitled "Preemption of Other Law":

> Except as specifically provided in this chapter, the provisions of this chapter preempt ordinances by local governments that prohibit or regulate any matter relating to the registration, labeling, distribution, sale, handling, use, application, or disposal of pesticides. It is not the intent of this section to preempt local responsibilities for zoning, fire codes, or hazardous waste disposal.

Minn.Stat. § 18B.02 (1990).

■ Minnesota recognizes two separate doctrines that determine preemption questions. The first, referred to specifically as "preemption," is based on the "occupying the field" concept. *Mangold Midwest Co. v. Village of Richfield*, 274 Minn. 347, 356, 143 N.W.2d 813, 819 (1966). A state law may fully occupy a particular field of legislation so that there is no room for local regulation. *Id.* Under this doctrine it does not matter whether the regulation coincides with, is complimentary to, or opposes the state law. The second doctrine, referred to as "conflict," provides that a local ordinance is invalid only if the terms of an ordinance and a state statute are irreconcilable. *Id.* at 352, 356, 143 N.W.2d at 816, 819.

■ Minn.Stat. § 18B.02 specifically provides that the statute "preempts" local ordinances that regulate the use and application of pesticides but does not "preempt local responsibilities for zoning." Because the statute expressly defines the scope of its preemption, it is unnecessary to analyze whether the applicable preemption doctrine is "occupying the field" or "conflict." The extent of the state's preemption is determined by the language of the statute. Therefore, the relevant inquiry is whether the ordinance constitutes a zoning measure that the statute exempts from its preemptive reach.

The language of the township's ordinance clearly addresses the use and application of pesticides. It requires a permit for any aerial spraying of pesticides or chemicals, except for emergency firefighting purposes. Anyone seeking a permit must submit detailed information on the risks and benefits associated with the pesticide, alternative treatments that could be used, the pesticide's status before the EPA, and "such other information as may be required." The township board may impose "any reasonable conditions" on the permit to protect public "health, safety, and welfare." There is a maximum $5,000 penalty for each violation of the ordinance, and each day of noncompliance constitutes a separate violation.

The township's ordinance does not regulate land use in the manner expected of a zoning ordinance. *See* Minn.Stat. § 462.-357 (1990).[1] Even though the statute on zoning covers not only land but also the air space above the surface, *id.* subd. 1, the language of the ordinance is specifically directed toward extensively regulating the aerial application of pesticides rather than toward the permissible uses of the land or the air space above it.

---

1. This statute allows a local government to regulate "location, height, width, * * * size of buildings and other structures, the percentage of lot which may be occupied, the size of yards and other open spaces, the density and distribution of population, the uses of buildings and struc- tures for trade, industry, residence, recreation, public activities, or other purposes, and the uses of land for trade, industry, residence, recreation, agriculture, * * * or other purposes, and may establish standards and procedures regulating such uses."

■ While it is true, as the township argues, that municipalities have the police power to regulate in the interest of public health, safety, and welfare, a township cannot invoke "police power" to accomplish what is otherwise preempted by state statute. *See, e.g., City of Minnetonka v. Mark Z. Jones Assoc.*, 306 Minn. 217, 236 N.W.2d 163 (1975) (city construction ordinance, insofar as it purported to adopt more stringent fire prevention measures affecting building design or construction, preempted by state building code); *Northwest Residence, Inc. v. City of Brooklyn Center*, 352 N.W.2d 764, 773–74 (Minn.App. 1984) (giving narrow reading to statute's grant of authority to local government), *pet. for rev. denied* (Minn. Jan. 4, 1985).

■ The breadth of the ordinance's requirements relating to the use and application of pesticides makes clear that the ordinance is preempted under the plain language of the first sentence of Minn.Stat. § 18B.02 and is not exempted as a zoning ordinance under the second sentence of the statute. If zoning is given the broad reading the township advocates, the statute's preemption of local ordinances that regulate the use and application of pesticides would be meaningless. We recognize the genuine concerns expressed by the township in enacting this ordinance. But we are not at liberty to reach those concerns in light of the plain language of the statute.

The fact that the United States Supreme Court has found that a similar ordinance was not preempted by federal statute does not change our analysis. In *Wisconsin Public Intervenor v. Mortier*, — U.S. ——, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991), the Supreme Court held that the Federal Insecticide, Fungicide, and Rodenticide Act did not preempt a local ordinance because the Act did not occupy the field of pesticide regulation, and the particular local ordinance did not conflict with the Act. *Id.* at ——, 111 S.Ct. at 2485–87.

However, the Supreme Court in *Mortier* was not presented with the issue of state law preemption. *Id.* at ——, 111 S.Ct. at 2481. The Court specifically noted the Act's "express authorization to the States," which "leaves the allocation of regulatory authority to the 'absolute discretion' of the States themselves, including the option of leaving local regulation of pesticides in the hands of local authorities." *Id.* at ——, 111 S.Ct. at 2483.

■ The township alternatively argues that its ordinance is an appropriate response to the Commissioner of Agriculture's failure to issue rules addressing local regulation of pesticides. Minn.Stat. § 18B.06, subd. 1 (1990) states that the Commissioner *"shall* adopt rules to implement and enforce this chapter including procedures addressing local control of pesticide regulation." (Emphasis added.)

Both parties agree that the Commissioner has not issued rules addressing local regulation. The state as amicus points out that the Commissioner plans to adopt such rules. In a letter to the township dated April 1992, five years after the statute was enacted, the department indicates that it is "in the early stages of the development of rules outlining procedures which address local control of pesticide regulation." Although the township's impatience is understandable, the proper remedy, provided by statute, is to petition the department to adopt a rule. *See* Minn.Stat. § 14.09 (1992).

## DECISION

A local aerial spraying ordinance that regulates the use and application of chemicals and pesticides is preempted by Minn. Stat. § 18B.02. We affirm the district court's grant of summary judgment and the permanent injunction prohibiting enforcement of the ordinance.

**Affirmed.**